**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: | Bankruptcy No. 12-10063-TPA |
| JOHN D. OIL AND GAS COMPANY, | Chapter 11 |
| Debtor. | |

-------------------------------------------------------------------------------

**DEBTOR'S SECOND AMENDED CHAPTER 11
PLAN OF REORGANIZATION DATED SEPTEMBER 22, 2013**

-------------------------------------------------------------------------------

Robert S. Bernstein, Esq.
BERNSTEIN-BURKLEY, P.C.
707 Grant Street, Suite 2200
Pittsburgh, PA  15219
Tel:  (412) 456-8100

# **TABLE OF CONTENTS**

ARTICLE I:  Definitions ................................................................................................... 1

ARTICLE II:  Interpretation, Application of Definitions, Rules of Construction.................. 8

ARTICLE III:  Administrative Expense Claims...................................................... 9

ARTICLE IV:  Classification of Claims and Interests ........................................... 10

ARTICLE V:  Treatment of Claims and Equity Interests.......................................11

ARTICLE VI:  Treatment of Executory Contracts and Unexpired Leases ...........................13

ARTICLE VII:  Acceptance or Rejection of the Plan ...........................................................14

ARTICLE VIII:  Means of Implementation of the Plan .......................................................14

ARTICLE IX:  Distributions Under the Plan .......................................................................17

ARTICLE X:  Disputed Claims............................................................................................20

ARTICLE XI:  Abandonment of Property.............................................................................21

ARTICLE XII:  Conditions Precedent to Effective Date .....................................................21

ARTICLE XIII:  Effects of Confirmation ............................................................................22

ARTCILE XIV:  Releases, Injunctions and Waivers of Claim ............................................24

ARTICLE XV:  Retention of Jurisdiction ............................................................................26

ARTICLE XVI:  Miscellaneous Provisions .........................................................................29

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:<br><br>JOHN D. OIL AND GAS COMPANY,<br><br>        Debtor. | Bankruptcy No. 12-10063 TPA<br><br>Chapter 11 |

**DEBTOR'S SECOND AMENDED CHAPTER 11**
**PLAN OF REORGANIZATION DATED SEPTEMBER 22, 2013**

John D. Oil and Gas Company ("John D."), the above-captioned debtor and debtor in possession, hereby proposes this Second Amended Chapter 11 Plan of Reorganization Dated September 22, 2013 (the "Plan").

**ARTICLE I**
**DEFINITIONS**

Unless the context otherwise requires, the following terms, when used in the Plan, shall have the meanings set forth below:

**1.0    Definitions**

    **1.1    "Administrative Bar Date"** means the last date on which a request for payment of an Administrative Expense Claim may be filed, as set forth in Section 3.3 of the Plan.

    **1.2    "Administrative Expense Claim"** means any right to payment constituting a cost or expense of administration of the Chapter 11 Case allowed under sections 503(b) and 507(a)(l) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtor's estate, (b) any actual and necessary costs and expenses of operating the Debtor's business in the ordinary course, (c) any indebtedness or obligations incurred or assumed by the Debtor during the Chapter 11 Case in the ordinary course of business, (d) any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under section 330 or 503 of the Bankruptcy Code, and (e) any fees or charges assessed against the Debtor's estate under 28 U.S.C. § 1930.

    **1.3    "Allowed"** means, with respect to any Claim (other than a Disputed Claim) (a) any Claim, proof of which was timely filed with the Bankruptcy Court or, by order of the Bankruptcy Court was not required to be filed, or (b) any Claim that has been, or hereafter is listed in the Schedules as liquidated in amount and not disputed or contingent, and, in (a) and (b) above, as to which either (1) no objection to the allowance thereof has been filed within the

1

applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (2) the Claim has been allowed by a Final Order (but only to the extent so allowed).  Unless otherwise specified in the Plan or in a Final Order allowing such Claim, "Allowed" in reference to a Claim shall not include (a) interest on the amount of such Claim accruing from and after the Petition Date, (b) punitive or exemplary damages, or (c) any fine, penalty or forfeiture.

      **1.4**     **"Allowed Amount"** means the sum at which a Claim is Allowed.

      **1.5**     **"Assets"** means all the assets of the Estate, whether or not reflected in the financial records of the Debtor.

      **1.6**     **"Bankruptcy Cases"** means this Chapter 11 Case at Bankruptcy Case Number 12-10063, the Great Plains Exploration, LLC bankruptcy case at Bankruptcy Case Number 12-10058, and the Oz Gas, Ltd. case at Bankruptcy Case Number 12-10057.

      **1.7**     **"Bankruptcy Code"** means title 11 of the United States Code, as amended and in effect as of the Petition Date.

      **1.8**     **"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Western District of Pennsylvania.

      **1.9**     **"Bankruptcy Rules"** means (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 8 U.S.C. § 2075, and (b) the local rules of the Bankruptcy Court, in each case, as in effect on the Petition Date.

      **1.10**    **"Business Day"** means any day other than (a) a Saturday; (b) a Sunday; and (c) any other day on which the Court is required or authorized to close.

      **1.11**    **"Cash"** means legal tender of the United States of America.

      **1.12**    **"Cash Collateral Orders"** means the Interim Order Authorizing Use of Cash Collateral at Docket Number 39 of 12-10057, Docket Number 43 of 12-10058 and Docket Number 44 of 12-10063and any other Orders Authorizing Use of Cash Collateral in the Bankruptcy Cases.

      **1.13**    **"Causes of Action"** means any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims, remedies (including without limitation any remedy based on theories of equitable subordination or similar equitable relief) and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

      **1.14**    **"Chapter 11 Case"** means the Debtor's voluntary bankruptcy case filed with the Bankruptcy Court under chapter 11 of the Bankruptcy Code.

**1.15** **"Claim"** means any claim against the Debtor, whether or not asserted, known or unknown, as the term "claim" is defined in section 101(5) of the Bankruptcy Code, including all Administrative Expense Claims.

**1.16** **"Class"** means each of the groups of substantially similar Claims or Equity Interests classified in Article II of the Plan and pursuant to section 1129(a)(1) of the Bankruptcy Code.

**1.17** **"Collateral"** means any property or interest in property of the Debtor's Estate that is subject to a valid lien to secure the payment or performance of a Claim, which lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.18** **"Committee"** means the Official Committee of Unsecured Creditors appointed by the United States Trustee on January 31, 2012, in the Chapter 11 Case of Oz Gas.

**1.19** **"Confirmation Date"** means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

**1.20** **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as it may be adjourned or continued from time to time.

**1.21** **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.22** **"Court Order"** means any order entered in the Chapter 11 Case by the Court.

**1.23** **"Debtor"** means John D. Oil and Gas Company.

**1.24** **"Debtors"** means the Debtor, Great Plains Exploration, LLC, and OZ Gas, Ltd., collectively.

**1.25** **"Disclosure Statement"** means the Disclosure Statement to the Plan, including the exhibits, appendices and schedules thereto, as the same may be amended, modified or supplemented from time to time and as approved by the Bankruptcy Court pursuant section 1125 of the Bankruptcy Code.

**1.26** **"Disputed Claim"** means any Claim that has not been allowed by a Final Order as to which (a) a Proof of Claim has been filed with the Bankruptcy Court, and (b) an objection has been or may be timely filed or deemed filed under applicable law and any such objection has not been (1) withdrawn, (2) overruled or denied by a Final Order, or (3) granted by a Final Order. For purposes of the Plan, a Claim that has not been Allowed by a Final Order shall be considered a Disputed Claim, whether or not an objection has been or may be timely filed, if (A) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (B) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (C) any corresponding Claim has been scheduled in the Schedules as disputed, contingent, or unliquidated, (D) no corresponding Claim has been scheduled in the Schedules, or

3

(E) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof.

**1.27** **"Distribution(s)"** means the distributions of Cash or other property of the Estate to be made in accordance with the Plan.

**1.28** **"Effective Date"** is the 30th Business Day following the date of the entry of the Confirmation Order, *provided that* the conditions precedent set forth in section 12.2 hereof are satisfied.  If a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first Business Day after that date on which no stay of the Confirmation Order is in effect, provided that the Confirmation Order has not been vacated.

**1.29** **"Entity"** means an entity as defined in section 101(15) of the Bankruptcy Code.

**1.30** **"Equipment Assets"** mean all tangible machinery owned by John D. Oil and Gas Co.

**1.31** **"Equity Interests"** means (a) any capital stock or other ownership interest in the Debtor including equitable ownership; (b) any option, warrant, or right to purchase, sell, or subscribe for an ownership interest in, or other equity security of, the Debtor; (c) any and all redemption, conversion, exchange, voting, participation, or dividend rights or liquidation preferences relating to any of the foregoing; and (d) all Claims arising in connection therewith, including, without limitation, Claims arising from the rescission of a purchase or sale of an equity security of the Debtor, for damages arising from the purchase or sale of such security, or for reimbursement or contribution under section 502 of the Bankruptcy Code on account of such Claim and attorneys' fees associated therewith.

**1.32** **"Estate"** means the estate of the Debtor created by section 541 of the Bankruptcy Code upon commencement of the Chapter 11 Case.

**1.33** **"Estates"** means the estates of the Debtors.

**1.34** **"Estate Litigation"** means all claims, Causes of Action, and Recovery Actions of the Estate against third-parties including, but not limited to, any claims, and/or litigation or claims instituted or asserted by the Debtor prior to the Effective Date.

**1.35** **"File"** or **"Filed"** means, with respect to any pleading, entered on the docket of the Chapter 11 Case and properly served in accordance with the Bankruptcy Rules.

**1.36** **"Final Cash Collateral Order"** means the Order Granting Motion to Use Cash Collateral at Docket Number 132 of 12-10057, Docket Number 126 of 12-10058 and Docket Number 141 of 12-10063.

**1.37** **"Final Order"** means an order or judgment of the Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Case which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for a new trial, re-argument or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for a new trial, re-argument or rehearing shall then be pending, or (b) if an appeal,

4

writ of certiorari, new trial, re-argument or rehearing thereof has been sought, such order or judgment of the Court shall have been affirmed by the highest court to which such order was appealed or certiorari shall have been denied or a new trial, re-argument or rehearing shall have been denied or resulted in no modification of such order and the time to take any further appeal, petition for certiorari or move for a new trial, re-argument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order not to be a Final Order.

1.38    **"Great Plains"** means Great Plains Exploration, LLC.

1.39    **"Impaired"** means, with respect to any Claim, a Claim with respect to which the Plan alters the legal, equitable or contractual rights to which such Claim entitles its holder.

1.40    **"John D."** means John D. Oil and Gas Company.

1.41    **"John D. Obligation"** means that certain loan issued by RBS to John D. Oil and Gas Company.

1.42    **"Lease(s)"** means any oil and/or gas lease between a party and the Debtor.

1.43    **"Lessee"** means the Debtor.

1.44    **"Lessor(s)"** means any party that entered into a Lease with the Lessee.

1.45    **"Osborne"** means Richard M. Osborne.

1.46    **"Osborne Released Claims"** means any and all Claims, breaches of contract, debts, suits, demands, causes of actions and actions of any type, or notice, which arose or are based on occurrences or transactions which took place prior to the Effective Date, whether known or unknown, contingent or liquidated, suspected or unsuspected, at law or in equity, or based in contract or tort, including but not being limited to those related in any way to the Oz-GPE Obligation /or the John D Obligation, and/or the Personal Guarantees,  against any of the Osborne Releasing Parties.

1.47    **"Osborne Releasing Parties"** means all persons or entities against whom any claim may have been or may be asserted for any of the Osborne Released Claims, including but not limited to RBS and their officers, agents, directors, representatives, employees, affiliates, attorneys, professionals, and successors and assigns.

1.48    **"Other Secured Claims"** means any Secured Claim other than the Class 2 claim of RBS.

1.49    **"Oz Committee"** means the Official Committee of Unsecured Creditors in the Oz Gas Bankruptcy Case**.**

1.50    **"Oz Gas"** means Oz Gas, Ltd.

1.51    **"Oz-GPE Obligation"** means those certain joint obligations of the OZ Gas and Great Plains to RBS.

1.52    **"Personal Guarantees"** means the guarantee obligation of Osborne on account of the Oz-GPE Obligation and of the John D. Obligation.

1.53    **"Petition Date"** means January 13, 2012, the date on which the Debtor commenced the Chapter 11 Case.

1.54    **"Plan"** means this Second Amended Chapter 11 Plan of Reorganization, including all schedules and exhibits hereto or thereto, as the same may be amended, modified or supplemented from time to time in accordance with its terms and applicable provisions of the Bankruptcy Code.

1.55    **"Plans"** means the Plans of Reorganization of the Debtors.

1.56    **"Priority Claim"** means any Claim of a kind specified in section 502(i) or 507(a)(3), (4), (5), (6), (7), (8), or (9) of the Bankruptcy Code.

1.57    **"Priority Tax Claim(s)"** means any Claim of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.58    **"Private Sale"** means the sale of assets of the Debtors as described in Article 8.1 hereof.

1.59    **"Private Sale Buyer"** means the purchaser at the Private Sale.

1.60    **"Professional"** means any person or Entity employed pursuant to a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Confirmation Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

1.61    **"Proof of Claim"** means any proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rules 3001 or 3002.

1.62    **"Recovery Actions"** means, collectively and individually, without limitation, preference Claims or Causes of Action, fraudulent conveyance Claims or Causes of Action, rights of setoff and other Claims and Causes of Action under sections 510, 542, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and other applicable bankruptcy and non-bankruptcy law.

1.63    **"Reorganized Debtor"** means John D. Oil and Gas as it exists after the Effective Date.

1.64    **"RBS"** means RBS Citizens, N.A. d/b/a Charter One, RBS Asset Finance, Inc., and RBS Equipment Finance, Inc.

6

**1.65** **"RBS Delayed Settlement Payment"** means the RBS Settlement Payment plus $100,000, plus $5,000 for each day after December 31, 2013 until the RBS Delayed Settlement Payment is paid.

**1.66** **"RBS Released Claims"** means any and all claims, breaches of contract, debts, suits, demands, causes of actions and actions of any type or notice which arose or are based on occurrences or transactions which took place prior to the Effective Date, whether known or unknown, contingent or liquidated, suspected or unsuspected, at law or in equity, or based in contract or tort, including but not being limited to those related in any way to the Oz-GPE Obligation, the John D Obligation and/or the Personal Guarantees, against any of the RBS Releasing Parties.

**1.67** **"RBS Releasing Parties"** means all persons or entities against whom any Claim may have been asserted for any of the RBS Released Claims, including but not being limited to the Debtors, , the Personal Guarantors, and their officers, agents, directors, representatives, employees, affiliates, attorneys, professionals, and successors and assigns.

**1.68** **"RBS Settlement Payment"** means the amount of $10.8 million to be paid to RBS pursuant to this Plan in exchange for full release of all RBS claims against the Debtors.

**1.69** **"Schedules"** means the schedules, statements and lists filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been and may be amended or supplemented from time to time.

**1.70** **"Secured Claim(s)"** means a Claim secured by Collateral.

**1.71** **"Secured Creditor(s)"** means a creditor holding a Secured Claim.

**1.72** **"Unimpaired"** means a Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code and paragraph 1.39, above.

**1.73** **"United States Trustee"** means the United States Trustee appointed under 28 U.S.C. § 591 to serve in the Western District of Pennsylvania.

**1.74** **"Unsecured Claim"** means any Claim that is neither secured nor entitled to priority under the Bankruptcy Code or by a Final Order of the Bankruptcy Court, including, but not limited to:  (a) any claim arising from the rejection of an executory contract or unexpired lease under section 365 of the Bankruptcy Code, and (b) any portion of a Claim to the extent the value of the holder's interest in the Estate's interest in the property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to section 506(a) of the Bankruptcy Code.

**1.75** **"Well Assets"** mean all gas or oil wells, leases, lease assignments, and pipelines held or owned by John D. Oil and Gas Company.

**1.76** **"Working Interest"** means, with respect to an oil and/or gas lease, the interest of the Lessee that is burdened with the obligation to bear and pay the costs and expenses of

7

exploration, drilling, development, maintenance, and operations with respect to such oil and/or gas lease, without regard to Lessor's royalties, overriding royalties, production payments, net profits interests, and similar burdens upon or payable out of production.


## ARTICLE II

### INTERPRETATION; APPLICATION OF DEFINITIONS; RULES OF CONSTRUCTION; AND COMPUTATION OF TIME

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter. For purposes of the Plan: (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the document shall be substantially in that form or substantially on those terms and conditions; (b) any reference in the Plan to an existing document or exhibit Filed or to be Filed means the document or exhibit as it may have been or may be amended, modified, or supplemented; and (c) unless otherwise specified, all references in the Plan to Articles, Schedules, and Exhibits are references to articles, schedules, and exhibits of or to the Plan. Unless otherwise specified, the words "herein," "hereof," "hereto," "hereunder," and other words of similar meaning refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained in the Plan. A capitalized term used but not defined herein shall have the meaning given to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

The headings in the Plan are for convenience of reference only and shall not expand, limit, or otherwise affect the provisions of the Plan. Unless otherwise indicated herein, all references to dollars are to United States dollars.

Unless otherwise expressly provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8

## ARTICLE III

## ADMINISTRATIVE EXPENSE CLAIMS

**3.1      Administrative Expense Claims**

### 3.1.1    General

Each Allowed Administrative Expense Claim (other than the Administrative Expense Claims of Professionals, which are addressed in Section 3.2) shall be paid by the Estate in Cash, in full, by the later of (i) the Effective Date, or (ii) five (5) Business Days after the date such Claim becomes an Allowed Claim, or in such amounts and on such other terms as may be agreed on between the holder of such Claim and the Debtor, or otherwise is ordered by the Court.

### 3.1.2 Judicial Fees

All fees comparable to the fees payable pursuant to 28 U.S.C. § 1930, if and to the extent due, shall be paid in Cash in the full amount of such Claim when due.  The Debtor shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this Chapter 11 Case, or enters an order either converting this case to a case under Chapter 7 of the Bankruptcy Code or dismissing this case. The Debtor shall file with the Bankruptcy Court, and shall transmit to the United States trustee, a true and correct statement of disbursements made by the Debtor for each month that this Chapter 11 Case remains open, in a format prescribed by the United States Trustee.

**3.2      Professional Compensation**

Professionals or other Entities asserting Administrative Expense Claims based on professional services rendered before the Confirmation Date must File and serve the Debtor, counsel to the Debtor, and such other Entities as are designated by the Bankruptcy Code, the Bankruptcy Rules, the Confirmation Order, or any other order of the Court, an application for final allowance of such Claim no later than forty-five (45) days after the Confirmation Date.  Objections to any application for final allowance of compensation by Professionals must be Filed and served on the Debtor, counsel to the Debtor, and the requesting Entity by the later of (a) thirty (30) days after the Effective Date or (b) thirty (30) days after the Filing of the relevant application.

**3.3      Administrative Bar Date**

Any request for the payment of an Administrative Expense Claim (other than the Administrative Expense Claims of Professionals, which are addressed in Section 3.2) shall be discharged and barred forever and shall not be enforceable against the Debtor or any of the property of the Estate, unless such request for the payment of an Administrative Expense Claim is Filed and served upon the Debtor within forty-five (45) days after the Confirmation Date.

# ARTICLE IV

## CLASSIFICATION OF CLAIMS AND INTERESTS

**4.1    Classified Claims**

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, confirmation, and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim shall be deemed to be classified in a particular Class only to the extent that such Claim qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that the remainder of such Claim qualifies within the description of such different Class.  A Claim is in a particular Class only to the extent that such Claim is Allowed in that Class and has not been otherwise settled prior to the Effective Date.

The classification of Claims and Equity Interests of the Debtor pursuant to the Plan are as follows:

| Class | Class Name | Status |
|---|---|---|
| Class 1 | Priority Claims | Unimpaired--deemed to have accepted the Plan and not entitled to vote |
| Class 2 | Secured Claim of RBS | Impaired--entitled to vote. |
| Class 3 | Other Secured Claims | Unimpaired—deemed to have accepted the Plan and not entitled to vote |
| Class 4 | General Unsecured Claims | Impaired—entitled to vote |
| Class 5 | Equity Interests | Unimpaired—deemed to have accepted the Plan and not entitled to vote |

The treatment of Claims against, and Equity Interests in the Debtor, is more fully set forth in Article V.

**4.2      Unclassified Claims**

In accordance with section 1123(a)(1) of the Bankruptcy Code, administrative Expense Claims and Priority Tax Claims are not classified and are therefore excluded from the Classes listed above.

**4.3      Bar Date for Claims**

The Bankruptcy Court set August 9, 2012 as the Bar Date for general prepetition Claims.  As set forth in Article X hereof, the Debtor may review and object to any such Claim within 120 days after the later of:  (a) the Effective Date, or (b) the date on which such Claim was filed with the Bankruptcy Court; *provided, however*, that such 120 day period of review may be extended by the Bankruptcy Court upon the request of the Debtor after notice and a hearing.

## ARTICLE V

## TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN

The following treatment set forth in this Article V shall be accorded to Claims against, and Equity Interests in, the Debtor.

**5.1      Class 1:  Priority Claims**

Class 1 consists of all Priority Claims.  Unless the Debtor and the holder of such Claim agree to a different treatment, each holder of an Allowed Priority Claim shall be paid in full, in Cash, upon the later of (a) the Effective Date, or (b) five (5) Business Days from the date on which such Claim is Allowed.

Class 1 is Unimpaired, and the holders of Class 1 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Class 1 Claims are not entitled to vote to accept or reject the Plan.

**5.2      Class 2:  Secured Claim of RBS**

**THIS  PLAN  CONTAINS  A  RELEASE  OF  CLAIMS  AGAINST  NON-DEBTORS, WHICH WILL BE EFFECTIVE IF THIS PLAN IS CONFIRMED AND CLASS 2 (RBS) ACCEPTS THE PLAN.**

RBS is a common Secured Creditor of the Debtors and Osborne.

The Class 2 Claims of RBS shall be paid as follows:

      1.       The RBS Settlement Payment amount shall be $10.8million dollars

2.      The RBS Settlement Payment shall be paid to RBS on or before December 31, 2013, time being of the essence, in full and complete satisfaction of the Osborne Released Claims, including the Oz-GPE Obligation and the John D Obligation.

3.      Upon timely payment of the RBS Settlement Payment or timely payment of the RBS Delayed Settlement Payment, all Osborne Released Claims shall be fully released and discharged, including, without limitation, claims against the Debtors and Richard M. Osborne.

4.      If the Private Sale does not close in time to make payment timely of the RBS Settlement Payment by December 31, 2013 (or such date as may be agreed to in writing by RBS), Debtor will pay the RBS Delayed Settlement Payment amount by January 15, 2014.

5.      If neither the RBS Settlement Payment nor the RBS Delayed Settlement Payment is timely paid, RBS shall be entitled to payment of its Allowed Claim on January 16, 2014.

6.      RBS shall maintain its lien on the assets of the Debtor until timely payment of the RBS Settlement Payment or timely payment of the RBS Delayed Settlement Payment is made.

Class 2 is Impaired, and the holder of a Class 2 Claim is entitled to vote to accept or reject the Plan.

**5.3      Class 3:  Other Secured Claims**

Class 3 consists of all Allowed Other Secured Claims against the Debtor.  The majority of the Other Secured Claims are held by equipment-finance lenders, many of which have been satisfied by Osborne.  The Debtor's obligations to such holders of each Class 3 claim shall be paid as follows:

5.3.1.  Holders of Allowed Other Secured Claims which are secured by Collateral included in the Private Sale will be paid an amount agreed by the Creditor and the Debtor from the proceeds of the Private Sale, for the Collateral sold.  In the event of a dispute as to the amount to be paid, the Debtor shall escrow the full amount of the Allowed Other Secured Claim until the Court can determine the proper amount to be paid for the Collateral sold.  Upon Final Order of Court, the proper amount shall be paid in satisfaction of Creditor's claim as related to the Collateral sold.

5.3.2.  Holders of Allowed Other Secured Claims which are secured by Collateral **not** included in the Private Sale shall be granted relief from the Automatic Stay (and any injunction granted by the Confirmation of this Plan) effective 30 days after the Private Sale, but no later than February 15, 2014.  Before such date, if the Creditor and Debtor agree on the amount to be paid in satisfaction of the Creditors Claim and if that amount is paid, then the Creditor's Claim shall be satisfied in full.

**5.4      Class 4:  General Unsecured Claims**

Class 4 consists of all Allowed General Unsecured Claims against the Debtor.

Unless the Debtor and the holder of any such Claim agree to a different treatment, each holder of an Allowed Class 4 Claim shall receive 90% of the Allowed Amount, to be paid within 30 days of the closing of the Private Sale.

Holders of Class 4 Claims against the Debtor that are insiders or related-entities shall not receive any distribution on account of their Allowed Claim until such time as all other Class 4 creditors have been paid pursuant to the terms of the Plan.

Class 4 is Impaired, and the holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

**5.5      Class 5: Equity Interests**

Class 5 consists of all Equity Interests in the Debtor.  The holders of Class 5 Equity Interests, in consideration of the significant financial contributions that have been made to fund this Plan and the Chapter 11 Case, will retain their interests.

Class 5 is Unimpaired, and the holders of Class 5 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Class 5 Claims are not entitled to vote to accept or reject the Plan.

## ARTICLE VI

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1      Assumption of Unexpired Leases and Executory Contracts**

Effective on the Effective Date, all pre-petition executory contracts and unexpired leases to which the Debtor is a party shall be deemed assumed, except for any executory contract or unexpired lease that (i) has been assumed or rejected pursuant to a Final Order; or (ii) is the subject of a pending motion for authority to assume or reject contracts or leases filed by the Debtor prior to the Confirmation Date.

The executory contracts and unexpired leases that the Debtor entered into after the Petition Date, to the extent such contract or lease is executory or unexpired, respectively, under section 365 of the Bankruptcy Code, are to be assumed under the Plan.

13

**6.2    Curing Defaults**

Any monetary defaults under an executory contract or unexpired lease to be assumed under the Plan or otherwise shall be satisfied (1) by payment by the Debtor of the amount of the default in Cash on the Effective Date, or (2) on such other terms as agreed to by the Debtor and the non-debtor party(ies) to such executory contract or unexpired lease.  The Debtor does not believe that there are any unpaid cure amounts.

**ARTICLE VII**

**<u>ACCEPTANCE OR REJECTION OF THE PLAN</u>**

**7.1    Holders of Claims Entitled to Vote**

Classes 2 and 4 are Impaired under the Plan.  Each holder of an Allowed Claim in these Classes shall be entitled to vote to accept or reject the Plan.

**7.2    Holders of Claims and Equity Interests Not Entitled to Vote**

Classes 1, 3, and 5 are Unimpaired by the Plan either because Claims in those Classes will be paid or otherwise compensated in full under the Plan or because the Holders of such Claims have agreed to accept a lesser amount in full satisfaction of the Claims or agreed to accept an equity share in the Debtor.  As a result of this, the holders of Allowed Claims in each of these Classes are conclusively presumed to have accepted the Plan, and holders of Claims in these Classes are not entitled to vote to accept or reject the Plan.

**7.3    Acceptance by Impaired Classes**

Any Class of Impaired Claims shall be deemed to have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

**ARTICLE VIII**

**<u>MEANS OF IMPLEMENTATION OF THE PLAN</u>**

**8.1    Private Sale**

The Assets of the Estate will vest or re-vest in the Reorganized Debtor on the Effective Date. The Debtors have negotiated a private sale of the certain assets consisting principally of Debtors'

14

mineral leases, wells, pipelines and related (well-operating) equipment for a price sufficient to pay all of the Debtors' obligations under their respective Plans. An Asset Purchase Agreement covering the Private Sale will be filed with a Supplement to the Disclosure Statement at least ten (10) days in advance of the hearing on Approval of the Disclosure Statement. Until it has received final, internal approval for the transaction, the buyer is unable to be disclosed in time to meet the Court's September 23 deadline for the filing of this Plan.

The Private Sale is expected to close not later than December 31, 2013, in order to permit timely remittance of the RBS Settlement Payment. Out of an abundance of caution, this Plan provides for a possible delay of fifteen days, resulting in the RBS Delayed Settlement Payment, providing a significant incentive for the Debtors to close on the Private Sale on or before December 31, 2013.

The Private Sale, pursuant to this Plan, will be free and clear of all claims, liens and encumbrances of creditors. Although this Plan will implement the Private Sale, the Debtors also intend to file a Motion for Sale to provide the clearest notice to creditors and parties in interest.

The Private Sale will not permit competitive bidding, as it is a private sale. Since the sale proceeds will be sufficient to pay all Allowed Claims and payments required by the Plans, no creditor or party in interest (other than Insiders) has any interest in a higher price being paid. RBS asserts a senior lien on substantially all of the assets of the Debtors and would be the only party to arguably stand to benefit from a higher sale price. The Plan assumes that RBS accepts the Plan, including the provisions relating to the Private Sale.

Unless the Private Sale does not occur as a result of the failure of the Private Sale Buyer to participate (or close), and unless the Private Sale Buyer is the purchaser of the Well Assets at the Public Sale, the Private Sale Buyer shall be entitled to its reasonable expenses of sale and due diligence, provided it can demonstrate to the Court that its efforts benefitted the Estates.

## 8.2    Public Sale Alternative

In the event the Private Sale is not consummated in order to pay RBS the RBS Settlement Payment or the RBS Delayed Settlement Payment by January 15, 2014, unless extended by RBS, after January 15, 2014, the Court shall appoint a Plan Administrator with the advice and recommendations of RBS, the Oz Committee and the Office of U.S. Trustee. The Plan Administrator shall expose the assets of the Debtors' to a Public Sale pursuant to a Motion for Sale. The Public Sale shall consist of two parts, the first being the Well Assets and the second being the Equipment Assets. The Plan Administrator shall consult with RBS and engage an appropriate professional to conduct the Public Sale. At the Public Sale, there shall be competitive bidding. The Private Sale Buyer is not disqualified from bidding at the Public Sale as a result of any failure to close on the Private Sale.

8.2.1 Unless the assets are purchased at the Public Sale by a credit bid from RBS, the proceeds of the Public Sale shall be distributed as follows:

a. First, to expenses of the Public Sale and any Allowed Administrative Expense Claims;

b. Second, to Allowed Secured Claims, including RBS on account of the Oz-GPE Obligation and the John D Obligation.

c. Third, to Allowed unsecured Priority Claims;

d. Fourth, the Allowed Unsecured Claims; and

e. Fifth, the Insider Claims if all Unsecured Claims are paid pursuant the terms of the Plan.

8.2.2 In the event of a credit bid by RBS, the bid shall include a sufficient cash amount to pay Allowed Administrative Expense Claims and Allowed Priority Claims.

## 8.3    Authority of Principals

On the Confirmation Date, the authority, power and incumbency of the person then acting as principal of the Debtor shall continue and such principal shall be deemed to have continued in his position without interruption.

## 8.4    Maintenance of Books and Records

The Debtor shall maintain records and books of account relating to the Estate property, and shall at all reasonable times, permit any authorized representative designated by the Debtor to have access to the financial records relating to the Estate property.  The Debtor shall file or cause to be filed all required tax returns for the Estate and pay any and all taxes, if any, when due from the Estate.

## 8.5    Corporate Name

On the Effective Date, the corporate name of the Reorganized Debtor shall remain the same, John D. Oil and Gas, Ltd.

## 8.6    Reliance on Others

The Debtor may rely upon and shall be protected in acting or refraining from acting upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed or presented by the proper person or persons; *provided, however*, that the Debtor shall be under a duty to have examined the same to determine whether or not such writings conform to the requirements of this Plan.

16

**8.7      Liability for Errors and Omissions**

The Debtor and its agents shall not be liable for any error of business judgment or with respect to any action taken or omitted to be taken, unless it shall be proved that the Debtor or its agents shall have been grossly negligent or shall have acted with willful misconduct in ascertaining the pertinent facts or in performing any of its rights, powers or duties according to this Plan.  The Debtor makes no representations as to: (i) the value or condition of the Estate or any part thereof, (ii) the dollar amount, if any, which may be collected as a result of pursuing Estate Litigation, (iii) the amount at which liabilities may be settled, and (iv) the security afforded by this Plan, or as to the validity, execution (except its own execution), enforceability, legality or sufficiency of this Plan, and the Debtor shall incur no liability or responsibility in respect of such matters.

**8.8      Indemnification of the Reorganized Debtor**

The Debtor and its agents and representatives shall be indemnified by and receive reimbursement from the Estate against and from any and all loss, liability, cost, damage or expense which it may incur or sustain in the exercise and performance of any of its powers and duties pursuant to this Plan unless such loss, liability, cost, damage or expense shall be incurred or sustained as a result of gross negligence or willful misconduct.  Other than claims by the Debtor or its agents and representatives for indemnification or reimbursement resulting from their own gross negligence or willful misconduct, all claims of the Debtor its agents and representatives for indemnification or reimbursement shall be first offset by the Debtor against any portion of the Estate used or to be used for payment of Distributions made or to be made in accordance with this Plan.

**8.9      Amendment to Plan Prior to Effective Date**

Subject to further order of the Court, the Debtor, as plan proponent pursuant to section 1121 of the Bankruptcy Code, retains the exclusive right to amend the Plan and solicit acceptances thereof until the Effective Date.

**ARTICLE IX**

**DISTRIBUTIONS UNDER THE PLAN**

**9.1      Distributions**

The Debtor shall make all distributions required under the Plan on account of Allowed Claims.

**9.2      Delivery of Distributions**

   **9.2.1 General Provisions; Undeliverable Distributions**

17

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Debtor at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on Proof(s) of Claim Filed by such holder, or (b) the last known address of such holder if no Proof of Claim is Filed or if the Debtor has been notified in writing of a change of address. If any Distribution is returned as undeliverable, the Debtor may, in its discretion, make such efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made as the Debtor deems appropriate, but no Distribution to any holder shall be made unless and until the Debtor has determined the then-current address of the holder, at which time the Distribution to such holder shall be made to the holder without interest. Amounts in respect of any undeliverable Distributions made by the Debtor shall be returned to, and held in trust by, the Debtor until the Distributions are claimed or are deemed to be unclaimed property under section 347(b) of the Bankruptcy Code as set forth below. The Debtor shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; *provided, however*, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan.

### 9.2.2 Minimum Distributions

Notwithstanding anything herein to the contrary, if a Distribution to be made to a holder of an Allowed Claim would be $25 or less in the aggregate, no such Distribution will be made to that holder.

### 9.2.3 Unclaimed Property

Except with respect to property not Distributed because it is being held on account of a Disputed Claim or because it represents a minimum Distribution under Section 9.2.2 above, Distributions that are not cashed by the claimant by the expiration of ninety (90) days from the date of the distribution check shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Estate, and the Claims with respect to which those Distributions are made shall be automatically canceled. After the expiration of that six month period, the claim of any Entity to those Distributions shall be discharged and forever barred. Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim. All funds or other property that vests or revests in the Estate pursuant to this Section shall become the property of the Debtor as unclaimed property in accordance with section 347(b) of the Bankruptcy Code.

## 9.3     Manner of Cash Payments Under the Plan

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Debtor or by wire transfer from a domestic bank, at the option of the Debtor.

## 9.4     Compliance with Tax Requirements

18

In connection with making Distributions under this Plan, to the extent applicable, the Debtor shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  The Debtor may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.   Any property so withheld will then be paid by the Debtor to the appropriate authority.  If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six (6) months from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as an undeliverable distribution in accordance with Section 9.2.1.

## 9.5     No Payments of Fractional Cents

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan.  Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole cent.

## 9.6     Interest on Claims

Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Allowed Claims and no holder of an Allowed Claim shall be entitled to interest accruing on or after the Petition Date on any Allowed Claim.  Interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim. Except as expressly provided herein or in a Final Order of the Court, no prepetition Claim shall be Allowed to the extent that it is for postpetition interest or other similar charges.

## 9.7     No Distribution in Excess of Allowed Amount of Claim

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

## 9.8     Setoff and Recoupment

The Debtor may, but shall not be required to, setoff against, or recoup from, any Allowed Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that the Debtor or the Estate may have against the holder of such Allowed Claim, but neither the failure to do so nor the Allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor or the Estate of any right of setoff or recoupment that any of them may have against the holder of any Allowed Claim.

# ARTICLE X

## DISPUTED CLAIMS

### 10.1    Objection Deadline

All objections to Disputed Claims shall be Filed and served upon the holders of each such Claim(s) within 120 days after the later of:  (a) the Effective Date, or (b) the date on which such Claim was filed with the Bankruptcy Court; unless otherwise ordered by the Bankruptcy Court after notice and a hearing.

### 10.2    Estimation of Claims

At any time, the Debtor may request that the Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtor has previously objected to such Claim or whether the Court has ruled on any such objection, and the Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Debtor may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.  All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

### 10.3    Prosecution of Objections and Requests for Estimation

Except as otherwise ordered by the Court, responsibility for the filing, litigation, settlement, or withdrawal of all objections to Disputed Claims or requests for estimation thereof, including objections and estimation requests pending on the Effective Date, shall be the responsibility of the Debtor, and the costs of such litigation, settlement, or withdrawal shall be borne by the Estate.  From and after the Confirmation Date, all objections shall be litigated to a Final Order, except to the extent the Debtor elects to withdraw any such objection or the Debtor and the claimant elect to compromise, settle or otherwise resolve any such objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim without approval of the Court.

### 10.4    No Distributions Pending Allowance

Notwithstanding any other provision hereof, unless ordered otherwise by a Final Order, if any portion of a Claim is a Disputed Claim, no payment or Distribution provided hereunder shall be made on account of the Allowed portion of the Claim unless and until the Disputed portion of the Claim is Allowed.

20

# ARTICLE XI

## ABANDONMENT OF PROPERTY

### 11.1    Abandonment by the Debtor

The Debtor shall have the right to abandon in any commercially reasonable manner (including abandonment or donation to a charitable organization of the Debtor's choice) any other property that the Debtor reasonably concludes is of no benefit to the Estate or its creditors or that it reasonably determines, at the conclusion of Distributions or dissolution of the Estate, to be too impractical to distribute.  Such abandonment shall be (a) effected by a separate order of the Court on proper notice to the relevant parties and (b) be deemed to have been made under the Plan.

### 11.2    Abandonment Claims

If the abandonment of any asset pursuant to the Plan (including those abandoned pursuant to section 11.1) and the Confirmation Order results in damages to a non-debtor party, any Claim for such damages shall be forever barred and shall not be enforceable against the Debtor, the Estate or their properties, successors, and assigns, unless a Proof of Claim is Filed and served upon counsel for the Debtor on or before thirty (30) days after the later to occur of (a) the entry of the Confirmation Order or (b) the date of the entry by the Court of an order authorizing abandonment of such asset.

# ARTICLE XII

## CONDITIONS PRECEDENT TO CONFIRMATION
## OF THE PLAN AND THE EFFECTIVE DATE

### 12.1    Conditions Precedent to the Confirmation of the Plan

It shall be a condition precedent to the confirmation of the Plan, that the Confirmation Order shall have been entered by the Court.

### 12.2    Conditions Precedent to the Effective Date of the Plan

The Plan shall not become effective and the Effective Date shall not occur unless and until the following conditions shall have been satisfied or waived in accordance with Section 12.3, in the Bankruptcy Cases:

(a)    The Confirmation Order shall be a Final Order; and,

21

(b)      After the entry of the Confirmation Order, no modifications shall have been made to the Plan except in accordance with its provisions with respect to its modification.

## 12.3    Waiver of Conditions Precedent

Each of the conditions precedent in Section 12.2 may be waived or modified, in whole or in part, by the Debtor.  Any such waiver or modification of a condition precedent in Section 12.2 may be affected at any time, without notice, without leave or order of the Court, and without any other formal action.

## ARTICLE XIII

## EFFECTS OF CONFIRMATION

## 13.1    Vesting of Assets

(a)      As of the Effective Date, title to the property of the Estate shall vest and/or re-vest in the Debtor subject to the Debtor's obligation to administer, liquidate and distribute the property in accordance with the terms of this Plan.

(b)      As of the Effective Date, all assets of the Debtor shall be free and clear of all claims except as provided for in the Plan or the Confirmation Order.

## 13.2    Release of Assets

Until the Effective Date, the Bankruptcy Court shall retain jurisdiction of the Debtor and its assets and properties.  Thereafter, jurisdiction of the Bankruptcy Court shall be limited to the subject matter set forth in Article XVI hereof.

## 13.3    Binding Effect

Except as otherwise provided in section 1121(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtor and its successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

## 13.4    Terms of Injunctions or Stays

Unless otherwise expressly provided herein, all injunctions or stays arising under or entered during the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the confirmation date, shall remain in full force and effect until the closing of the Chapter 11 Case.

## 13.5    Estate Litigation

Except as otherwise provided in the Plan, and notwithstanding any prior Orders of Court authorizing the Oz Committee to bring any Estate Litigation, the Debtor shall retain the exclusive right to enforce any and all Estate Litigation against any person or entity. The Debtor may pursue, abandon, or release any or all Estate Litigation as it deems appropriate, without the need to obtain approval or any or other further relief from the Bankruptcy Court. The Debtor, in its sole discretion, may offset any such claim held against a person or entity, against any payment due such person or entity under the Plan.

**13.6    Injunction**

Except as otherwise provided in the Plan, the Confirmation Order or a separate Order of the Bankruptcy Court, as of the Effective Date, all entities that have held or currently hold or may hold directly, derivatively or otherwise, a Claim or Equity Interest or other right that is terminated or canceled or otherwise subject to treatment pursuant to the terms of the Plan, are permanently enjoined from taking any of the following actions on account of any such claim or equity interest:

(a)    Commencing or continuing in any manner, any action or other proceeding against the Debtor or the Estate or its properties or interest in properties;

(b)    Attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or the Estate or its properties or interests in properties;

(c)    Creating, perfecting or enforcing any lien or other encumbrance against the Debtor or the Estate or its properties and interest in properties;

(d)    Asserting a setoff, right of subrogation, or recoupment of any kind against the Debtor or the Estate, or its properties or interests in properties; and

(e)    Commencing or continuing any action in any manner or in any place, with respect to Estate Property or against any of the Released Parties or that otherwise does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

**13.7    Injunction Against Interference with the Plan**

Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest along with their respective present, future or former employees, agents, officers, directors or principals shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

**13.8    Retention and Preservation of Claim Objections and Estate Litigation**

Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, upon entry of the Confirmation Order, the Debtor retains the right to object to all Claims and interests asserted against it and all of the Debtor's Estate Litigation, including without limitation: (1) Recovery Actions under Section 547 of the Bankruptcy Code against those parties receiving payments from the Debtor

within 90 days or one year prior to the Petition Date, (2) All claims and Causes of Action disclosed in the Debtor's schedules and Statement of Financial Affairs which are incorporated herein by reference; and (3) any and all claims and Causes of Action that the Debtor held pre-confirmation including, but not limited to, claims for unpaid accounts receivable and fraudulent transfer shall vest or revest in the Debtor except as otherwise provided in this Plan.

Unless a claim or Cause of Action against a creditor or other entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtor expressly reserves such claim or Cause of Action for later adjudication by the Debtor (including without limitation, claims and causes of action not specifically identified or which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances which may change or be different from those which the Debtor now believes to exist) and, therefore, no preclusion doctrine, including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the confirmation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except for such claims or Causes of Action that have been released in the Plan or any other Final Order.

## ARTICLE XIV

## RELEASES, INJUNCTIONS AND WAIVERS OF CLAIM

### 14.1    Release of Debtor

On the Effective Date, all Entities shall be conclusively presumed to have released the following parties following the filing of the Chapter 11 Case (but solely to the extent set forth below):  (a) the Debtor (including all present and former members thereof) and its attorneys, accountants, advisors and financial advisors (each of the foregoing, a "Released Party" and collectively, the "Released Parties"), from any claim or Cause of Action based on, arising from, or in any way connected with:

   (1) the Chapter 11 Case (including, without limitation, any actions taken and/or not taken with respect to the administration of Estate or the operation of the business of the Debtor);

   (2) the Plan or the Distributions received thereunder; and

   (3) the negotiation, formulation, and preparation of the Plan, except to the extent any such claim or Cause of Action against any Released Party arises solely as a direct result of that Released Party's fraud or willful misconduct.  In all respects, each of the Released Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

Notwithstanding anything to the contrary contained in the Plan, none of the releases provided herein shall prejudice or otherwise affect the right of any party in interest to object to (i) any applications for compensation filed by Professionals or (ii) any request seeking compensation under section 503 of the Bankruptcy Code.

**14.2    Release of Released Parties by the Debtor**

Without limiting any other applicable provisions of Article XIII, as of the Effective Date, the Debtor on behalf of itself, its Estate, and its respective successors, assigns, and any and all Entities who may purport to claim by, through, for, or because of, them, shall be deemed to have unconditionally released and be permanently enjoined from any prosecution or attempted prosecution of any and all Causes of Action, including, without limitation, any Recovery Actions, that they have, may have, or claim to have, that are property of, assertable on behalf of, or derivative of the Debtor or its Estate, against the Released Parties (but solely in their capacity as Released Parties).

**14.3    Releases by Holders of Claims**

On and after the Effective Date, each holder of a Claim or Equity Interest against the Debtor shall be deemed to have released unconditionally all property of the Estate and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, Recovery Actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Person or Entity would have been legally entitled to assert (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, except to the extent necessary to enforce the provisions of the Plan.

**14.4    Costs of Asserting Claims Against Released Parties**

Neither the Debtor nor its successors or assigns, shall fund or be obligated to fund (whether directly or indirectly) the costs of pursuing against any of the Released Parties a Claim or Cause of Action or Recovery Action, that is released by the Plan, except as otherwise provided herein.

**<u>NOTICE</u>**

**THIS PLAN CONTAINS RELEASES OF AND BY CERTAIN NON-DEBTORS RELATED TO CLAIMS AGAINST THEM, WHICH ARE HELD BY RBS. CONFIRMATION OF THE PLAN IS INTENDED TO RESULT IN THE RELEASE OF CLAIMS HELD BY RBS AGAINST NON-DEBTORS AS PROVIDED HEREIN.**

**14.5    Release of Non-Debtors**

After the Effective Date and after payment of the RBS Settlement Payment or the RBS Delayed Settlement Payment, this Plan shall cause the Osborne Releasing Parties to have released the RBS Releasing Parties from the Osborne Released Claims.

**14.6    Releases by Non-Debtors**

It is a condition of the effectiveness of the releases set forth in the preceding paragraph that this Plan shall have caused the RBS Releasing Parties to have released the Osborne Releasing Parties from the Osborne Released Claims.

**14.7   Effect of Releases**

The effect of the provisions of this Plan is to forever resolve and pay in full satisfaction the claims which may be held by RBS against the Debtors, Osborne and the RBS Releasing Parties and vice versa.

<strong>ARTICLE XV</strong>

<strong><u>RETENTION OF JURISDICTION</u></strong>

**15.1   Retention of Jurisdiction**

Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction of all matters arising out of or relating to the Reorganization Case, the Plan, the Confirmation Order, and the Estate pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a) To resolve any matters relating to the assumption and assignment or rejection of executory contracts or unexpired leases, and to hear, determine and, if necessary, liquidate any Claims resulting therefrom;

(b) To decide and resolve any and all motions, adversary proceedings, including Estate Litigation, applications, contested matters and any other matters, whether pending as of the Effective Date or brought thereafter in accordance with the terms hereof;

(c) To consider and rule on the compromise and settlement of any Claim against, or Cause of Action on behalf of, the Debtor or the Estate;

(d) To ensure that Distributions to holders of Allowed Claims are accomplished as provided herein, and resolve any disputes concerning any such Distributions;

(e) To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim (including any Administrative Expense Claim), and to resolve any and all objections to the Disputed Claims;

(f) To hear and determine any and all applications for the allowance of compensation of Professional for professional services rendered and expenses incurred prior to the Confirmation Date;

(g) To enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan;

(h) To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency, in the Plan or in any order of the Court as may be necessary to carry out the purposes and intent of the Plan and to implement and effectuate the Plan;

(i) To resolve any cases, controversies, suits or disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or any person's or Entity's obligations incurred in connection with the Plan;

(j) To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(k) To enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, revoked, reversed or vacated;

(l) To enforce remedies upon any default under the Plan;

(m) To enforce, interpret, and determine any disputes arising in connection with any orders, stipulations, judgments, and rulings entered in connection with the Reorganization Case (whether or not the Reorganization Case have been closed);

(n) To resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan, or any Estate's obligations incurred in connection herewith;

(o) To determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan;

(p) To issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person or Entity with the consummation of the Plan, or the enforcement of any rights, remedies, or obligations created under the Plan;

(q) To determine such other matters as may be provided for in the Confirmation Order or other orders of the Court or as may be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(r) To hear any other matter if the Court's exercise of jurisdiction thereover is not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

(s) To hear and determine issues relating to discharge, injunctions, covenants not to sue, and other waivers and protections provided under or relating to the Plan;

27

(t) To recover all Assets of the Debtor and the Estate wherever located; and

(u) To enter a final decree closing the Reorganization Case.

## 15.2    Modification of the Plan

### 15.2.1  Modification Before the Effective Date.

The Debtor may alter, amend or modify the Plan or any provision or portion thereof under section 1127(a) of the Bankruptcy Code at any time prior to the Effective Date; provided, however, that there shall be no material modification to the Plan.  The Debtor shall provide parties in interest with notice of such amendments or modifications as may be required by the Bankruptcy Rules or any Order of the Court.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as altered, amended, modified or clarified unless the proposed alteration, amendment, modification or clarification adversely changes the treatment of the Claim of, or releases granted to, such holder.

### 15.2.2  Modification Before Substantial Consummation

After the Effective Date but prior to the "substantial consummation" (as that term is defined in section 1101(2) of the Bankruptcy Code) of the Plan, the Debtor may, pursuant to section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and otherwise provide for such matters as may be necessary to carry out the purpose and effect of the Plan, as long as the proceedings do not adversely affect the treatment of holders of Claims under the Plan; provided, however, that, to the extent required by the Bankruptcy Rules or an order of the Court, prior notice of any such proceedings shall be served in accordance therewith.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not adversely change the treatment of the Claim, or releases granted to, such holder.

### 15.2.3  Modification After Substantial Consummation

After "Substantial Confirmation" (as that term is defined in section 1101(2) of the Bankruptcy Code) of the Plan, the Debtor may amend the Plan to provide for technical corrections to the Plan provided that such changes do not affect the interests of the claim holders.

**ARTICLE XVI**

**MISCELLANEOUS PROVISIONS**

**16.1    Governing Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a schedule or exhibit hereto or instrument, agreement, or other document executed in connection with the Plan provides otherwise, the rights, duties, and obligations arising under the Plan, and the instruments, agreements, and other documents executed in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the internal laws of the Commonwealth of Pennsylvania, without giving effect to any choice of law provisions that would require the application of the law of any other jurisdiction.

**16.2    Notices**

To be effective, all notices, requests, and demands under the Plan must be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**To Counsel for the Debtor:**
Robert S. Bernstein, Esq.
707 Grant Street, Suite 2200
Pittsburgh, PA 15219
Fax No. 412-456-8135

**16.3    Further Documents and Actions**

The Debtor shall execute, and is authorized to File with the Court and deliver, such agreements and other documents or information, and to take or cause to be taken such actions, as may be necessary or appropriate to effect and further evidence the terms and conditions of the Plan and to consummate the transactions and transfers contemplated by the Plan.  The Debtor and all other necessary or appropriate parties shall execute any and all documents and instruments that must be executed under or in connection with the Plan in order to implement the terms of the Plan or to effectuate the Distributions under the Plan, provided that such documents and instruments are reasonably acceptable to such party or parties.

**16.4    Relationship Between the Plan and Disclosure Statement**

To the extent that the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.

**16.5     Reservation of Rights**

If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Reorganization Case, including the Debtor, are and will be reserved in full.  Any concessions or settlements reflected herein (if any), are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest shall be bound or deemed prejudiced by any such concession or settlement.

**16.6     Post-Confirmation Date Fees and Expenses**

After the Confirmation Date, the Debtor shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of the Professionals employed by the Estate or the Debtor in connection with the implementation and consummation of the Plan, the claims reconciliation process and any other matters as to which such Professionals may be engaged.  The fees and expenses of such Professionals shall be paid within ten (10) Business Days after submission of a detailed invoice therefore to the Debtor.  If the Debtor disputes the reasonableness of any such invoice, it shall timely pay the undisputed portion of such invoice, and submit the dispute regarding the balance of such invoice to the Court for a determination of its reasonableness.

**16.7     Binding Effect**

The provisions of this Plan  shall be binding on, and shall inure to the benefit of, the Debtor, all holders of Claims or Equity Interests, any Entity named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan, and any current or future heir, executor, administrator, successor, assign or any person or entity claiming derivatively through or because of any of the foregoing (including, but not limited to, any trustee appointed for the Debtor under chapter 7 or 11 of the Bankruptcy Code).  The Confirmation Order shall provide that the terms and provisions of the Plan and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting any of the Reorganization Case to a case under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

IN WITNESS WHEREOF, the undersigned has duly executed the Plan as of the date first above written.

Dated:  September 22, 2013              **JOHN D. OIL AND GAS COMPANY**


By: */s/ Richard M. Osborne*_____
       Richard M. Osborne



**BERNSTEIN-BURKLEY, P.C.,**


By: */s/ Robert S. Bernstein*_____
       Robert S. Bernstein, Esq.
       PA ID No. 34308
       rbernstein@bernsteinlaw.com

       707 Grant Street, 2200 Gulf Tower
       Pittsburgh, PA 15219
       (412) 456-8101 (phone)
       (412) 456-8135 (fax)

       **Attorney for Debtor**

31