**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:<br><br>JOHN D. OIL AND GAS COMPANY,<br><br>Debtor. | Bankruptcy No. 12-10063-TPA<br><br>Chapter 11 |

---

**DISCLOSURE STATEMENT TO ACCOMPANY
DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN
OF REORGANIZATION DATED SEPTEMBER 22, 2013**

---

Robert S. Bernstein, Esq.
BERNSTEIN-BURKLEY, P.C.
707 Grant Street, Suite 2200
Pittsburgh, PA  15219
Tel:  (412) 456-8100

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:<br><br>JOHN D. OIL AND GAS COMPANY,<br><br>Debtor. | Bankruptcy No. 12-10063-TPA<br><br>Chapter 11 |

**DISCLOSURE STATEMENT TO ACCOMPANY DEBTOR'S SECOND AMENDED
CHAPTER 11 PLAN OF REORGANIZATION DATED SEPTEMBER 22, 2013**

☐ Chapter 11 Small Business (Check only if debtor has elected to be considered a small business under 11 U.S.C. § 1121(e)).

The Debtor furnishes this disclosure statement to creditors in the above-captioned matter pursuant to Bankruptcy Code § 1125 to assist them in evaluating the proposed *Debtor's Second Amended Chapter 11 Plan of Reorganization Dated September 22, 2013* (the "Plan"), a copy of which is attached hereto. Creditors may vote for or against the Plan. Creditors who wish to vote must complete their ballots and return them to the following address before the deadline noted in the order approving the disclosure statement and fixing time. The Court will schedule a hearing on the Plan pursuant to 11 U.S.C. § 1129.

Capitalized terms not otherwise defined herein shall have the meanings given to them in the Plan.

Address for return of ballots:

Bernstein-Burkley, P.C.
Attn:  John D. Ballots
707 Grant Street, Suite 2200
Pittsburgh, PA 15219

**I.    Background**

    1.    Name of Debtor:

        John D. Oil and Gas Company
        f/k/a Liberty Self-Stor, Inc.
        8500 Station Street, Suite 345
        Mentor, OH  44060

    2.    Type of Debtor (individual, partnership, corporation):  Corporation

1

3. Debtor's Business or Employment: The Debtor is a publicly-traded exploration and production company organized under the laws of the State of Maryland. It is in the business of acquiring, exploring, developing, and producing oil and natural gas in northeast Ohio.

4. Date of chapter 11 Petition: January 13, 2012

5. Events that Caused the Filing: The Debtor's financial difficulties were the direct result of the drop in the price of natural gas. As a result of the dramatic drop is gas prices, the Debtor was out of compliance with certain covenants with its secured lender, RBS.

6. Anticipated Future of the Company & Source of this Information and Opinion:

    After the Private Sale of assets, the Debtor will be able to engage in new business ventures alone or in combination with other Osborne-related entities. The Debtor will be substantially debt-free and out of bankruptcy.

7. Summarize all significant features of the Plan including when and how each Class of Creditor will be paid and what, if any, liens will be retained by secured creditors or granted to any creditor under the Plan:

    This is a reorganizing Chapter 11 Plan. The Debtor proposes to pay creditors pursuant to the following terms:[1]

    Administrative claims are not part of a class. The Debtor will pay all administrative claims, in full, on the Effective Date unless otherwise agreed by claimant.

    Class 1 consists of the Priority Claims. The Priority Claims shall receive payment in full upon the latter of (a) the Effective Date and (b) five (5) Business Days from the date on which such claim is allowed.

    Class 2 consists of the Secured Claims of RBS. The RBS Settlement Payment amount shall be $10.8 million dollars. The RBS Settlement Payment shall be paid to RBS on or before December 31, 2013, in full and complete satisfaction of the Oz-GPE Obligation and the John D. Obligation. If the Private Sale does not close in time to make payment timely of the RBS Settlement Payment by December 31, 2013 (or such date as may be agreed to by RBS), Debtor will pay the RBS Delayed Settlement Payment amount by January 15, 2014. If neither the RBS Settlement Payment nor the RBS Delayed Settlement Payment is timely paid, RBS shall be entitled to payment of its Allowed Claim on January 16, 2014.

    Class 3 consists of all other Secured Claims. Class 3 consists of all Allowed Other Secured Claims against the Debtor. Holders of Allowed Other Secured Claims which are secured by Collateral included in the Private Sale will be paid an amount agreed by the Creditor and the Debtor from the proceeds of the Private Sale, for the Collateral sold, or the amount of their

---

[1] The Debtor reserves the right to object to the allowance of any Claim, as more fully described in the Plan and/or applicable sections of the Bankruptcy Code.

2

claim will be escrowed pending determination by the Court.  Holders of Allowed Other Secured Claims which are secured by Collateral <u>not</u> included in the Private Sale shall be granted relief from the Automatic Stay effective 30 days after the private sale, during which time such creditor may reach agreement on an amount to be paid.

<u>Class 4</u> consists of all Allowed General Unsecured Claims against the Debtor.  Unless the Debtor and the holder of any such allowed claim agree to a different treatment, each holder of an Allowed Class 4 Claim shall receive 90% of the Allowed Amount, paid within thirty (30) days of the closing of the Private Sale.  Holders of Class 4 Claims against the Debtor that are insiders or related-entities shall not receive any distribution on account of their Allowed Claim until such time as other Class 4 creditors have been paid pursuant to the terms of the plan.

<u>Class 5</u> consists of all Equity Interests in the Debtor.  The Equity Interest owners will retain their interests in the Debtor.

8. Are All Monthly Operating Statements current and on File with the Clerk of Court?

   ☒ Yes    ☐ No

9. Does the plan provide for releases of non-debtor parties?   Yes

   After the Effective Date and after payment of the RBS Settlement Payment or the RBS Delayed Settlement Payment, this Plan shall cause the Osborne Releasing Parties to have released the RBS Releasing Parties from the Osborne Released Claims.

   On the Effective Date, all entities shall be conclusively presumed to have released the following parties following the filing of the Chapter 11 Case (but solely to the extent set forth below):  the Debtor (including all present and former members thereof) and its attorneys, accountants, and advisors, from any claim or Cause of Action based on, arising from, or in any way connected with (A) the Chapter 11 Case (including, without limitation, any actions taken and/or not taken with respect to the administration of Estate or the operation of the business of the Debtor); (B) the Plan or the Distributions received thereunder; and (C) the negotiation, formulation, and preparation of the Plan.  This is intended to release the Osborne Parties from matters related to the <u>conduct</u> of the Chapter 11 case, not from any personal liability for Claims.

10. Identify all executory contracts that are to be assumed or assumed and assigned.

    The Debtor believes that all unexpired leases and executory contracts have been assumed pursuant to prior Court orders.  Any unexpired lease or executory contract not previously assumed or rejected in the Chapter 11 Case will be assumed upon Confirmation.

11. Has a bar date been set?  (If not, a motion to set the bar date has been filed simultaneously with the filing of this disclosure statement.)

    ☒ Yes    ☐ No

3

12. Has an election under 11 U.S.C. § 1121(e) been filed with the Court to be treated as a small business?

☐ Yes    ☒ No

13. Specify property that will be transferred subject to 11 U.S.C. § 1146(c).

Not applicable.

## II. Creditors

**NOTE: The claims listed herein are as set forth in Proofs of Claim filed by the claimants or by the Debtor in its Schedules of Assets and Liabilities. The Debtor has filed claim objections in connection with disputed claims. The Debtor reserves, and shall have, the right to further object to the allowance of any claim, or portion thereof, pursuant to the terms of the Plan and/or applicable Bankruptcy Law. The amounts listed in this section reflect the Orders sustaining the Debtor's claim objections and any stipulations, consent orders or settlements the Debtor has entered into with any of the claimants.**

### A. CLASS 1 -- PRIORITY CLAIMS

| Creditor | Amount Claimed | Type of Collateral |
|---|---|---|
| Internal Revenue Service | $19.32 | N/A |
| Portage County Treasurer | $76.01 | N/A |
| Ohio Treasurer of State | $139.87 | N/A |
| Ashtabula Co. Treasurer | $272.74 | N/A |
| Geauga County Treasurer | $41,626.20 | N/A |
| Ohio Bureau of Workers' Comp. | $343.56 | N/A |

**The Following Claims Have Been Satisfied:**

| | | |
|---|---|---|
| Calfee, Halter & Griswold, LLP | $30,195.91 | N/A |
| Dottores Companies LLC | $246,374.91 | N/A |

### B. CLASS 2 -- RBS SECURED CLAIM

| Creditor | Amount Claimed | Amount Owed | Type of Collateral | Will Liens Be Retained (Y) (N) |
|---|---|---|---|---|
| RBS | $9,177,255.42 | $10.8 million[2] | Blanket Lien | Yes |

### C. Class 3 -- OTHER SECURED CLAIMS

---

[2] The 10.8 million amount resulting from the proceeds of the private sale to occur on December 31, 2013 will satisfy, in full, all claims of RBS stemming from Oz-GPE Obligation and the John D. Obligation.

4

| Creditor | Amount Claimed | Type of Collateral | Will Liens Be Retained (Y) (N) |
|---|---|---|---|
| Ally Financial | $41,644.75 | Vehicle | Yes |
| Lake County Treasurer | $52,887.36 | Real Estate | Yes |

D. Class 4 -- GENERAL UNSECURED CLAIMS

1. Amount Debtor Scheduled (Disputed and Undisputed)     $   471,393.32
2. Amount of Unscheduled Unsecured Claims               $   734,794.85
3. Total Claims Scheduled or Filed                      $ 1,206,188.17
4. Amount Debtor Disputes                               $   781,734.70
Estimated Allowable Unsecured Claims                    $   251,725

III. **Assets**

The exact value of the Assets is unknown. The chart below is the Debtor's best estimate at Fair Market Value.

**ASSETS**

| Assets | Book Value | Basis for Value Priority of Lien | Fair Market Value | Amount of Debtor's Equity (Value Minus Liens) |
|---|---|---|---|---|
| Cash | $25,553 | Actual | $25,553 | $0 |
| Accounts Receivable | $521,446 | Books & Records | $177,336 (estimate) | $0 |
| Prepaids | $22,267 | Books & Records | $22,267 | $0 |
| Investment in Kykuit JV | $300,465 | Books & Records | $0.00 | $0 |
| Investment in Liberty Self Stor | $1,802,684 | Books & Records | $901,432 (estimate) | $0 |
| Wells | $2,644,000 | Reserve Report 12/31/12 | $1,322,000 (50% of Reserve Report) | $0 |
| FFE | $107,600 | Books & Records | $21,520 (estimate) | $0 |
| **TOTAL** | **$5,424,015** | | **$2,407,373** | **$0** |

1. Are any assets which appear on Schedule A or B of the bankruptcy petition not listed above? No

2. Are any assets listed above claimed as exempt?   No

    If so attach a copy of Schedule C and any amendments.

5

**IV.    Summary of Plan**

1. Effective Date of Plan:    Thirty (30) days after Plan Confirmation and conditions precedent of Section 12.2 of the Plan have occurred.

2. Will cramdown be sought?   No     If yes, state bar date:

3. Treatment of Secured Non-Tax Claims

**SECURED NON-TAX CLAIMS**

| Creditor | Class | Amount Claimed | Summary of Proposed Treatment |
|---|---|---|---|
| RBS | 2 | $9,177,255.42 | The RBS Settlement Payment for all RBS claims resulting from both the Oz-GPE Obligation and the John D. Obligation shall be $10.8 million dollars. This RBS Settlement Payment shall be paid to RBS on or before December 31st, 2013 from the Private Sale Proceeds, in full and complete satisfaction of the Oz-GPE Obligation and the John D. Obligation.[3] |
| Ally Financial | 3 | $41,644.75 | Relief from Stay granted effective 30 days after Effective Date. Allowed Claim to be Paid in Amount Agreed to by Creditor and Debtor |

4. Treatment of Secured Tax Claims

**SECURED TAX CLAIMS**

| Creditor | Class | Amount Claimed | Summary of Proposed Treatment |
|---|---|---|---|
| Lake County Treasurer | 1 | $52,887.36[4] | Allowed Claims Paid in Full |

5. Treatment of Administrative Non-Tax Claims

**ADMINISTRATIVE NON-TAX CLAIMS**

| Creditor | Amount | Type of Debt | Summary of Proposed Treatment |
|---|---|---|---|
| Bernstein-Burkley, P.C. | $140,000 | Professional | Allowed claims and approved professional fees |

---

[3] If the Private Sale does not close in time to make timely payment of the RBS Settlement Amount by December 31, 2013 (or such date as may be agreed to in writing by RBS), Debtor will pay the RBS Delayed Settlement Payment amount by January 16, 2014. The RBS Delayed Settlement Payment Amount is comprised of the RBS Settlement Payment amount of 10.8 million dollars plus $100,000, plus $5,000 for each day after December 31, 2013 until the RBS Delayed Settlement Payment is paid.  .  If neither the RBS Settlement Payment nor the RBS Delayed Settlement Payment is timely paid, RBS shall be entitled to payment of its Allowed Claim on January 16, 2014.

[4] There is an pending stipulation in the process of negotiation for this claim

|  | (estimate) |  | payable on the Effective Date |
|---|---|---|---|

**The Following Claims Have Been Satisfied:**

| Dottore Companies LLC | $95,987[5] | Receiver | This amount was previously satisfied by Receiver Fee Application Settlement |
|---|---|---|---|

6. Treatment of Administrative Tax Claims

**ADMINISTRATIVE TAX CLAIMS**

| Creditor | Amount | Type of Debt | Summary of Proposed Treatment |
|---|---|---|---|
| Geauga County | $41,626.20 | Real Estate Taxes | To be Paid on Effective Date |
| Ashtabula County | $272.74 | Real Estate Taxes | To be Paid on Effective Date |
| Portage County | $76.01 | Real Estate Taxes | To be Paid on Effective Date |

7. Treatment of Priority Non-Tax Claims

**PRIORITY NON-TAX CLAIMS**

| Creditor | Class | Amount Owed | Summary of Proposed Treatment |
|---|---|---|---|
| None |  |  |  |

8. Treatment of Priority Tax Claims

**PRIORITY TAX CLAIMS**

| Creditor | Class | Amount Claimed | Summary of Proposed Treatment |
|---|---|---|---|
| Internal Revenue Service | 1 | $19.32 | Allowed Claim to be Paid in Full |
| Portage County Treasurer | 1 | $76.01 | Allowed Claim to be Paid in Full |
| Ohio Treasurer of State | 1 | $139.87 | Allowed Claim to be Paid in Full |
| Ashtabula Co. Treasurer | 1 | $272.74 | Allowed Claim to be Paid in Full |
| Geauga County Treasurer | 1 | $41,626.20 | Allowed Claim to be Paid in Full |

9. Treatment of General Unsecured Non-Tax Claims

**GENERAL UNSECURED NON-TAX CLAIMS**

| Creditor | Class | Amount Claimed | Percent of Dividend (for Allowed Claims) |
|---|---|---|---|
| Amber Paukner | 4 | $15.30 | 90%** |
| AT&T | 4 | $45.48 | 90% |
| Cannon IV, Inc. | 4 | $128.69 | 90% |

---

[5] The amount was determined by adding the total amount of the claim purportedly attributable to this Debtor of $78,656.39 to a one-third share of the total post-petition claim.

| Creditor | Class | Amount Claimed | Percent of Dividend |
|---|---|---|---|
| Charter One MC SB | 4 | $6,239.65 | 90% |
| ComDoc, Inc. | 4 | $199.71 | 90% |
| Daniel and Deborah Lilly≠ | 4 | $144.38 | 90% |
| Digital One, Inc. | 4 | $201.88 | 90% |
| Distillata Company | 4 | $31.50 | 90% |
| Dworken & Bernstein Co., LPA | 4 | $121,291.50 | 90% (Partially paid by Osborne) |
| Hahn Loeser & Parks LLP | 4 | $27,532.00 | 90% |
| Hilaria Kerr and James T. Kerr | 4 | $1,500.00 | 90% |
| James W. Blum≠ | 4 | $2,000.00 | 90% |
| Keith and Audrey Taylor≠ | 4 | $10,000.00 | 90% |
| Kohrman Jackson & Krantz, PL | 4 | $25,601.64 | 90% |
| Laru Inc. ≠ | 4 | $1,751.41 | 90% |
| Maloney + Novotny LLC | 4 | $15,185.00 | 90% |
| McKay Development | 4 | $554.75 | 90% |
| New York State Thruway | 4 | $28.15 | 90% |
| Ohio Bureau of Worker's Compensation | 4 | $343.56 | 90% |
| RBS Citizens | 4 | $6,239.65 | 90% |
| Registrar and Transfer | 4 | $1,490.66 | 90% |
| Richard Silver≠ | 4 | $3,300.00 | 90% |
| RR Donnelly & Sons Company | 4 | $12,311.72 | 90% |
| Slovenska Pristava, Inc. ≠ | 4 | $1,089.94 | 90% |
| Speedway | 4 | $2,116.32 | 90% |
| Teleco of Cleveland | 4 | $425.01 | 90% |
| The Illuminating Co. | 4 | $55.78 | 90% |
| The Ohio Bell Telephone Company | 4 | $186.67 | 90% |
| Tri-State Measurement | 4 | $1,428.05 | 90% |
| Vera Keck Family Trust≠ | 4 | $650.44 | 90% |
| Virginia M. Huxel≠ | 4 | $450.00 | 90% |
| Wells Fargo Financial Leasing | 4 | $8,539.96 | 90% |
| William & Judith Armstrong≠ | 4 | $72.00 | 90% |
| William Ruple Co. LLC≠ | 4 | $575.00 | 90% |

**GENERAL UNSECURED NON-TAX CLAIMS – CLAIMS DISALLOWED BY COURT ORDER**

| Creditor | Class | Amount Claimed | Percent of Dividend |
|---|---|---|---|
| Carolyn Coatoam | 4 | $275.00 | 0%* |
| Deep Springs Trout Club | 4 | $368.34 | 0% |

**GENERAL UNSECURED NON-TAX CLAIMS – INSIDER CLAIMS**

| Creditor | Class | Amount Claimed | Percent of Dividend (for Allowed Claims) |
|---|---|---|---|
| Big Oats Field Supply Company | 4 | $101,976.97 | 0%* |
| Cobra Pipeline Company, Ltd. | 4 | $366.48 | 0%* |
| Great Plains Exploration | 4 | $117,127.13 | 0%* |
| Matchworks | 4 | $14,115.41 | 0%* |
| Mentor Hardware | 4 | $17.42 | 0%*/** |
| Orwell Natural Gas Company | 4 | $66.15 | 0%* |
| Orwell Trumbull Pipeline Co. | 4 | $481.18 | 0%* |

| Osair, Inc. | 4 | $18.48 | 0%*/** |
|---|---|---|---|

**GENERAL UNSECURED CLAIMS – (EQUITY INTERESTS)**

| Creditor | Class | Amount Claimed | Percent of Dividend |
|---|---|---|---|
| Disclaimer Trust U/L/W of B.J. Creager± | 4 | $300.0 | 0% |
| Stephen F. Kucera± | 4 | $4,108.00 | 0% |
| RJJ Properties, LLC± | 4 | $250,000.00 | 0% |
| Richard A. Bonner± | 4 | $250,000.00 | 0% |
| Julia S. Scott± | 4 | $2,125.00 | 0% |
|  |  |  |  |

* **Claims of insiders and related-entities are not entitled to any distribution pursuant to the terms of the Plan unless and until all other unsecured creditors have been paid pursuant to Plan terms.**

** **De minimus claims of less than $25.00 are not payable under the terms of the Plan.**

± **These claims are equity claims which the Debtor will seek to disallow as Class 4 Claims pursuant to a forthcoming claims objection.**

≠ **These claims are claims for royalties. The Debtor will cure all royalty amounts due and seek to expunge these Class 4 Claims in a forthcoming claims objection.**

10. Treatment of General Unsecured Tax Claims

**GENERAL UNSECURED TAX CLAIMS**

| Creditor | Class | Amount Claimed | Summary of Proposed Treatment |
|---|---|---|---|
| Ohio Treasurer of State | 1 | $139.87 | Allowed Claim to be Paid in Full |
| Portage County Treasurer | 1 | $76.01 | Allowed Claim to be Paid in Full |
| Geauga County Treasurer | 1 | $41,626.20 | Allowed Claim to be Paid in Full |

11. Will Periodic Payments be made to unsecured creditors?

☐ Yes  ☒ No

Other significant features of the plan:

The Class 2 Claims of RBS shall be paid as follows:

1. The RBS Settlement Payment amount shall be $10.8 million dollars

9

2. The RBS Settlement Payment shall be paid to RBS on or before December 31, 2013, time being of the essence, in full and complete satisfaction of the Osborne Released Claims, including the Oz-GPE Obligation and the John D Obligation.
3. Upon timely payment of the RBS Settlement Payment or timely payment of the RBS Delayed Settlement Payment, all Osborne Released Claims shall be fully released and discharged, including, without limitation, claims against the Debtors and Richard M. Osborne.
4. If the Private Sale does not close in time to make payment timely of the RBS Settlement Payment by December 31, 2013 (or such date as may be agreed to in writing by RBS), Debtor will pay the RBS Delayed Settlement Payment amount by January 15, 2014.
5. If neither the RBS Settlement Payment nor the RBS Delayed Settlement Payment is timely paid, RBS shall be entitled to payment of its Allowed Claim on January 16, 2014.
6. RBS shall maintain its lien on the assets of the Debtor until timely payment of the RBS Settlement Payment or timely payment of the RBS Delayed Settlement Payment is made.

Include any other information necessary to explain this plan:    Not applicable

## V. Comparison of Plan with Chapter 7 Liquidation

If the proposed Plan is not confirmed, the potential alternatives would include a proposal of a different Plan, dismissal of the case, or conversion of the case to Chapter 7. If this case is converted to Chapter 7, a Chapter 7 Trustee will be appointed to liquidate the Debtor's non-exempt assets and will be entitled to a significant statutory fee, which would be paid in full before any distribution is made to other claimants. Additionally, all secured claims and priority claims, including all expenses of administration, must be paid in full before any distribution is made to unsecured claimants.

Total value of Chapter 7 estate (See Section III)            $2,407,373
1. Less secured claims  (See Section IV-2)                   $9,271,787.74
2. Less administrative expenses (See Section IV-3
   and include approximate Chapter 7 expenses)               $   240,000
3. Less other priority claims  (See Section IV-4)            $    56,114.51

Total Amount Available for Distribution to Unsecured Creditors    $0

Divided to total allowable unsecured claims (See Section II C)    $0

Percentage of Dividend to Unsecured Creditors:    0%

Will the creditors fare better under the Plan than they would in a Chapter 7 liquidation?

☒ Yes    ☐ No

Explain:    In a Chapter 7 liquidation, a Chapter 7 Trustee would be appointed. The Chapter 7 Trustee would be entitled to the statutory fee which would further diminish any distribution to

creditors. In the Chapter 11 context, the Debtor is allowed to continue operating and generating revenue sufficient to pay a significant dividend to creditors.

## VI. Feasibility

    A. Attach Income Statement for Prior 12 Months
    B. Attach Cash Flow Statement for Prior 12 Months
    C. Attach Cash Flow Projections for Next 12 Months

Estimated amount to be paid on effective date of the Plan, including administrative expenses:

$352,001.87

Show how this amount was calculated.

| | |
|---|---|
| Administrative Class: | $240,000 |
| Taxes: | $95,365.06 |
| Unsecured Creditors: | $0 |
| UST Fees | $3,000 |
| TOTAL | $338,365.06 |

What assumptions are made to justify the increase in cash available for the funding of the Plan?

The Assets of the Estate will vest or re-vest in the Debtor on the Effective Date. The Debtors have negotiated a private sale of the certain assets consisting principally of Debtors' mineral leases, wells, pipelines and related (well operating) equipment for a price sufficient to pay all of the Debtors' obligations under their respective Plans. An Asset Purchase Agreement covering the Private Sale will be filed with a Supplement to the Disclosure Statement at least ten (10) days in advance of the hearing on Approval of the Disclosure Statement. Until it has received final, internal approval for the transaction, the buyer is unable to be disclosed in time to meet the Court's September 23 deadline for the filing of this Plan.

The Private Sale is expected to close not later than December 31, 2013 in order to permit timely remittance of the RBS Settlement Payment. Out of an abundance of caution, this Plan provides for a possible delay of fifteen days, resulting in the RBS Delayed Settlement Payment, providing a significant incentive for the Debtors to close on the Private Sale on or before December 31, 2013.

The Private Sale, pursuant to this Plan, will be free and clear of all claims, liens and encumbrances of creditors. Although this Plan will implement the Private Sale, the Debtors also intend to file a Motion for Sale to provide the clearest notice to creditors and parties in interest.

The Private Sale will not permit competitive bidding, as it is a private sale. Since the sale proceeds will be sufficient to pay all Allowed Claims and payments required by the Plans, no creditor or party in interest (other than Insiders) has any interest in a higher price being paid. RBS asserts a senior lien on substantially all of the assets of the Debtors and would be the only party to arguably stand to benefit from a higher sale price. The Plan assumes that RBS accepts the Plan.

Unless the Private Sale does not occur as a result of the failure of the Private Sale Buyer to participate (or close), and unless the Private Sale Buyer is the purchaser of the Well Assets at the Public Sale, the Private Sale Buyer shall be entitled to its reasonable expenses of sale and due diligence, provided it can demonstrate to the Court that its efforts benefitted the Estates.

Will funds be available in the full amount for administrative expenses on the effective date of the Plan?

Yes. Administrative claims will paid on the Effective Date from the Private Sale proceeds, unless otherwise agreed.
.

## VII. Management Salaries

**MANAGEMENT SALARIES**

| Name / Position | Salary on Petition Date | Proposed Salary |
|---|---|---|
| Richard M. Osborne / CEO | $0.00 | $0.00 |
| Carolyn T. Coatoam / CFO | $90,000 | $90,000 |
| Timothy Reilly / COO | $80,000 | $80,000 |

## VIII. Identify the Effect on Plan Payments and Specify Each of the Following:

1. What, if any, Litigation is Pending?   None

2. What, if any, Litigation is Proposed or Contemplated?

    The Debtor has filed numerous objections to claims and pursued various claims and causes of action.  Pursuant to Section 1123(b)(3)(B) and subject to the provisions of this Plan, upon entry of the Confirmation Order, the Reorganized Debtor retains the right to further object to all Claims and interests asserted against the Debtor.  The Reorganized Debtor retains the right to prosecute all of the Debtor's Estate Litigation, subject to the provisions of Article VII, above, including without limitation:  (1)  Recovery actions under Section 547 of the Bankruptcy Code against those parties receiving payments from the Debtor within 90 days or one year prior to the Petition Date, (2) All claims and Causes of Action disclosed in the Debtor's schedules and Statement of Financial Affairs which are incorporated herein by reference; (3) any and all claims and Causes of Action that the Debtor held pre-confirmation including, but not limited to, claims for unpaid accounts receivable and fraudulent transfer shall vest or revest in the Reorganized Debtor except as otherwise provided in this Plan.

    Unless a claim or Cause of Action against a creditor or other entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtor

expressly reserves such claim or Cause of Action for later adjudication (including without limitation, claims and causes of action not specifically identified or which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances which may change or be different from those which the Debtor now believes to exist) and, therefore, no preclusion doctrine, including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the confirmation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except for such claims or Causes of Action have been released in the Plan or any other Final Order.

## IX.    Certification

The undersigned hereby certifies that the information herein is true and correct to the best of my knowledge and belief formed after reasonable inquiry.

If Debtor is a corporation, attach a copy of corporate resolution authorizing the filing of this Disclosure Statement and Plan.

If Debtor is a general partnership, attach a copy of the consent agreement of all general partners to the filing of the bankruptcy.

Dated:  September 22, 2013                              */s/ Richard M. Osborne*
                                                        Richard M. Osborne
                                                        **Chief Executive Officer**


                                                        */s/ Robert S. Bernstein*
                                                        Robert S. Bernstein (PA ID #34308)

                                                        **Counsel to the Debtor**

# JOHN D. OIL AND GAS COMPANY

## CORPORATE RESOLUTIONS

The undersigned, being all of the Directors of John D. Oil and Gas Company, a Maryland corporation (the "Corporation"), hereby adopt the following preamble and resolutions and consent to the action taken by virtue thereof in all respects as though said preamble and resolutions were duly adopted at a Special meeting of the Board of Directors called and held on the 23rd day of September, 2013.

WHEREAS, the Bylaws of the Corporation provide that the Board of Directors of the Corporation may authorize the actions taken herein;

RESOLVED; that the Corporation is authorized to file and direct Bernstein-Burkley, P.C. to file (i) the Corporation's (Debtor's) Second Amended Chapter 11 Plan of Reorganization Dated September 22, 2013 (the "Plan"); (ii) the Disclosure Statement relating to the Plan; and (iii) all other documents and instruments described in or contemplated by the Plan and Disclosure Statement and such other documents as the board shall deem reasonably necessary to accomplish the terms and conditions of the aforementioned Plan in connection with the Corporation's Chapter 11 bankruptcy case (collectively, the "Plan documents"); and

BE IT FURTHER RESOLVED, that the Plan and Disclosure Statement, with such changes as the Officers in their discretion deem appropriate, are hereby approved; that the Officers are hereby authorized to execute and deliver the Plan Documents on the Company's behalf and in its name with such changes, modifications and additional terms as the Officers in their discretion deem appropriate, the approval of such changes, modifications and additions to be conclusively evidenced by the execution and delivery of the Plan Documents by any of the Officers; and that the Plan Documents shall be the valid obligation of and binding upon the Corporation in the form and content in which they are so executed and filed with the United States Bankruptcy Court for the Western District of Pennsylvania (the "Court"); and

RESOLVED, FURTHER, that the delegation of the power and authority to the Officers in the immediately preceding resolution is intended to be the fullest extent permitted by law and the Articles of Incorporation and Bylaws of the Corporation; and

RESOLVED, FURTHER that the Officers may certify to the Court or any person, firm or corporation having an interest that the foregoing resolutions are in conformity with the Articles of Incorporation and Bylaw of the Corporation and may also certify to any such person, firm or corporation the text and due adoption of the foregoing resolutions, and the incumbency and true signatures of the Officers; and

RESOLVED, FURTHER, that the Officers, on behalf of the Corporation, under its corporate seal or otherwise, are hereby authorized to take such other action, to make, enter into, execute, deliver, file and record any and all further agreements, documents and

instruments, and to take any and all other actions as may be necessary or advisable to carry out the purposes of the foregoing resolutions, the Plan and the transactions contemplated thereby, the taking of any such actions to constitute conclusive evidence of the exercise of such discretionary authority.

There being no further business to come before the meeting, the meeting was adjourned.

Witness the due execution hereof as of the date set forth below.

By: _____
Print Name: Thomas J. Smith
Title: Director

By: _____
Name: Richard M. Osborne
Title: Director/CEO

The undersigned, secretary of this corporation, hereby certifies that the within Resolutions have been duly filed with the undersigned.

_____
Name: Carolyn T. Coatoam
Title: Secretary